UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.         )<br>)<br>ANDRE ROSADO,    )<br>    Defendant.  )<br> ) | Crim. No. 05-40011-FDS |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS IN LIMINE**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this consolidated response to the various *Motions in Limine* filed by the defendant Andre Rosado ("Rosado" or "Defendant") on August 29, 2006 and September 11, 2006.

## I.   RELEVANT BACKGROUND

## II.

Around February 2005, agents from the Drug Enforcement Administration ("DEA") and officers from the Mobile Enforcement Team ("MET") received information from a confidential source ("CS") that Andre Rosado was selling crack cocaine in Fitchburg. The MET team is a task force comprised of DEA agents and officers from local police departments and sheriffs' offices who target violent drug trafficking operations. On February 23, 2005, the CS placed a recorded call to Rosado to arrange for an undercover agent to purchase an ounce of crack cocaine from Rosado for $1,500. Prior to the meeting, agents reviewed a booking photograph of Rosado. After the location of the transaction was changed a couple of times, Rosado got into the undercover agent's car and handed him the suspected crack cocaine in return for $1,500 in DEA funds. The suspected crack was later analyzed and determined to be cocaine base, which had a net weight of 29.4 grams.

On March 31, 2005, Rosado was indicted for one count of distribution of cocaine base in violation of 21 U.S.C. § 841. A sealed arrest warrant was issued, and on April 6, 2006, Rosado was arrested on the warrant by the DEA MET team.

As members of the MET team tried to approach Rosado to arrest him when he was identified outside a barber shop on 212 Water Street, Fitchburg, Massachusetts, Rosado fled the scene in a 1998 red Ford Taurus. After officers pursued Rosado in a car chase, Rosado crashed the Ford Taurus into a wall and fled from the car. As Rosado exited the car, he had a Taurus 9mm handgun in his hand. After being ordered to drop the weapon by an officer, Rosado placed the gun on the ground and fled on foot. After a brief foot chase, Rosado was captured by two members of the MET team. A trace was performed on the handgun and agents discovered that it had been reported stolen from an Orange county home in 2004.

MET team officers searched the Ford Taurus and recovered twelve bags of suspected crack cocaine and another Taurus handgun. The suspected drugs were analyzed and confirmed to be cocaine base with a net weight of 44.3 grams. An additional bag of crack cocaine was found in Rosado's pants pocket, which had a net weight of 3.4 grams.

Defendant moves in limine to exclude from evidence 1) the fact that the firearm defendant possessed was stolen; 2) that officers reviewed defendant's booking photo prior to purchasing drugs from him; 3) that agents and officers involved in the case were familiar with Rosado prior to February 23, 2005; and 4) that the MET team targets violent drug trafficking organizations.

II.     **GOVERNMENT'S RESPONSE**

The government agrees not to introduce evidence in its case-in-chief that the firearm was reported stolen. If, however, the defense questions the ownership of the firearm, the government may use the fact that it was stolen to rebut any evidence or inferences.

The government agrees not to mention the fact that the officers reviewed a "booking photo" of the defendant prior to the drug transaction, but intends to offer testimony that they reviewed a photograph of Rosado to establish that he was the person who sold drugs to the undercover agent. The Court can instruct the jury that no negative inferences should be drawn from the fact that the police had a photograph of Rosado.

The government also intends to offer evidence that agents and officers knew Rosado prior to February 23, 2005, because that testimony will explain why they began investigating him and to prove his identity as the person who sold crack cocaine to the undercover officer on February 23, 2005. Defendant fails to show how this testimony would be prejudicial.

Finally, fact that the MET team investigates violent drug trafficking targets is relevant to this case because it explains why the team began investigating the defendant. It is key to the government's case, and the defense has not shown that its relevance is outweighed by its prejudicial effect. The Court can instruct the jury not to consider the MET Team's purpose in evaluating the evidence.

## II.    CONCLUSION

For all of the foregoing reasons, the Defendant's motion to exclude testimony that the officers were familiar with the defendant, and that the MET team targets violent trafficking organizations should be denied.

DATED:   August 12, 2006                         Respectfully submitted,

                                                 MICHAEL J. SULLIVAN
                                                 United States Attorney


                                         By:    */s/ Leah B. Foley*
                                                 Leah B. Foley
                                                 Assistant U.S. Attorney
                                                 Tel: (617) 748-3144


## CERTIFICATE OF SERVICE

      This is to certify that I have this day served a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery to all counsel of record who do not automatically receive service of process via the Court's ECF electronic filing system.

      This 12th day of August 2006.
                                                 */s/ Leah B. Foley*
                                                 Leah B. Foley
                                                 Assistant U.S. Attorney
                                                 Tel: (617) 748-3144