**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ANDRE ROSADO,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Criminal Action No. 05-40011-FDS** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM AND ORDER**
**ON PETITIONER'S MOTION TO VACATE HIS SENTENCE**

**SAYLOR, J.**

This is a motion to vacate a sentence filed pursuant to 28 U.S.C. § 2255 by a person in federal custody. Petitioner Andre Rosado was convicted in 2006 of distribution of cocaine base, possession of cocaine base with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm after being convicted of another felony. He has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the motion will be denied.

## I. Factual Background

On February 23, 2005, Andre Rosado sold cocaine base to an undercover agent in Fitchburg, Massachusetts. (Indictment at 1-2). Based on that indictment, this Court issued a warrant for his arrest.

On April 6, 2005, officers executing that warrant arrested Rosado in Fitchburg. (Tr. 2:48-

53).[1] In the course of the arrest, he failed to pull his motor vehicle over at police request, and instead sped away, leading police in pursuit. (Tr. 3:21-23). He crashed the car he was driving, a red Ford Taurus, and got out of the vehicle holding a firearm. (Tr. 3:17; 3:65-70). Police instructed him to drop the gun. (Tr. 3:69). He complied, dropping the gun on the street, and fled on foot. (Tr. 2:52-53; 3:123). Police apprehended and arrested him near the crash site. (Tr. 2:52-53). Police then seized the gun that he had dropped and conducted an inventory search of the crashed Taurus. (Tr. 2:86; 3:117-22). The inventory search revealed 44.3 grams of cocaine base and a second loaded firearm in the vehicle. *United States v. Rosado*, 273 F. App'x 1, 3 (1st Cir. 2008); (Tr. 3:120-21). After his arrest, a superseding indictment was returned, charging him with three additional counts (Counts Two, Three, and Four). *Rosado*, 273 F. App'x at 3.

A jury convicted Rosado on all four counts of the indictment after a four-day trial. Specifically, he was convicted of distribution of cocaine base (Count One of the superseding indictment), possession of cocaine base with intent to distribute (Count Two), possession of a firearm in furtherance of a drug trafficking crime (Count Three), and possession of a firearm after being convicted of another felony (Count Four). (Verdict at 1-2).

At sentencing, on March 9, 2007, the Court made the following sentencing calculations:

> The Base Offense Level is 32 based on a drug weight of 77.1 grams of cocaine base. There are no adjustments for specific offense characteristics, including no firearm adjustment, because it's a 924(c) case, [and] no acceptance of responsibility, so the final adjusted offense level is 32. The Criminal History Score is 7, and the Criminal History Category would be a Roman numeral IV, but for the career offender provisions. The defendant qualifies under the career offender provisions of 4B1.1. He's at least 18 years old or was at the time of the

[1] All references to trial transcripts are formatted to note the day of trial and transcript page number. For example, a citation to the tenth, eleventh, and twelfth pages of the transcript from the second day of trial would read "Tr. 2:10-12."

> offense. The offense is a qualifying crime of violence or controlled substance offense, and he has two qualifying priors. That, as the presentence report indicates, has a number of effects. It changes his Criminal History Category to VI, and he winds up with a guideline range of 420 months to life, under the application of 4B1.1(c)(2).

(Sentencing Tr. 6:5-22). Both the government and petitioner agreed that the Court had correctly calculated a guideline range of 420 months to life. (Sentencing Tr. 7:1-6). The Court imposed a sentence of 360 months, five years below the low end of the guideline sentence. (Sentencing Tr. 22:12-14). The sentence consisted of a term of 300 months on Counts One and Two, a term of 120 months on Count Four, all to be served concurrently, and a term of 60 months on Count Three, to be served consecutively to the terms imposed on Counts One, Two, and Four. *Rosado*, 273 F. App'x at 2; (Sentencing Tr. 22:14-18).

Rosado appealed his sentence and conviction. On direct appeal, he conceded that the evidence at trial was sufficient to support his convictions for Counts One and Four, but challenged the sufficiency of the evidence as to Counts Two and Three, as well as the overall reasonableness of his sentence. *Rosado*, 273 F. App'x at 2, 2 n.1, 4. On April 14, 2008, the United States Court of Appeals for the First Circuit affirmed his conviction and sentence. *Id.* at 1.

On May 11, 2009, Rosado filed the present motion to vacate his conviction and sentence. On July 10, 2009, he filed a supplement to his original motion to vacate his conviction and sentence (the "first supplement"), which the Court considers in tandem with his original motion.[2]

In his motion to vacate and first supplement, Rosado raises five claims for review: (1)

---

[2] On January 3, 2012, petitioner filed a motion to further supplement his original motion to vacate (the "second supplement"), which the Court denied. Accordingly, the Court will not consider the second supplement as part of the motion to vacate.

that agents illegally searched his vehicle and seized evidence without probable cause, violating his Fourth Amendment rights; (2) that prosecutors intentionally used fraudulent documents in submissions to the Court, depriving him of his Fourteenth Amendment rights; (3) that there is insufficient evidence to prove Count One of the indictment, charging distribution of cocaine base; (4) that his trial counsel was ineffective in failing to object to Fourth Amendment violations, prosecutorial misconduct, and sufficiency-of-the-evidence issues; and (5) that his sentence was improperly calculated under 18 U.S.C. § 924(c)(1)(A). The Court will examine each of his claims in turn.

## II. Analysis

Pursuant to section 2255, a prisoner may file a motion to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255 (2006). A court may grant post-conviction relief on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The "fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[ ] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *Id*. (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). A petitioner bears the burden of establishing that he is entitled to relief under section 2255. *Id*.

Collateral relief in a section 2255 proceeding is generally unavailable if a petitioner has procedurally defaulted his claim by failing to raise it at trial or on direct appeal. *Berthoff v. United States*, 308 F.3d 124, 127-28 (1st Cir. 2002) (citing *Bousley v. United States*, 523 U.S.

614, 622 (1998)). A petitioner may avoid this default if he can show "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains," or if he can show actual innocence. *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *see also Bousley*, 523 U.S. at 622.

**A. <u>Fourth Amendment Claim</u>**[3]

Petitioner contends that his Fourth Amendment rights were violated because federal agents lacked sufficient evidence to support probable cause for his arrest, the search of his "residence and property on March 31, 2005," and the seizure of the gun on the same date.[4]

As an initial matter, petitioner's Fourth Amendment claims are procedurally barred because he failed to raise them at trial or on direct appeal. *Berthoff*, 308 F.3d at 127-28; *Rosado*, 273 F. App'x at 2. He has not demonstrated cause for his default, actual prejudice resulting from the alleged errors, or actual innocence. *Frady*, 456 U.S. at 167-68; *Bousley*, 523 U.S. at 622. Accordingly, his claims are procedurally barred.

In any event, the Fourth Amendment claims fail on the merits for the following reasons.

---

[3] In *Stone v. Powell*, the Supreme Court held that if a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, then a state prisoner may not obtain federal habeas corpus relief on the claim in a proceeding under 28 U.S.C. § 2254. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The First Circuit has explicitly left open the issue of whether *Stone* applies in section 2255 proceedings. *Arroyo v. United States*, 195 F.3d 54, 55 n.1 (1st Cir. 1999) ("The Supreme Court has hinted that *Stone v. Powell* applies to section 2255 proceedings . . . and at least two circuits have so determined . . . . However, we previously reserved the issue and, once again, need not decide it."); *Kiley v. United States*, 260 F. Supp. 2d 248, 275 (D. Mass. 2003); *Novak v. United States*, 2012 WL 170885 at *1 n.1 (D. Mass. 2012). Because the issue remains unsettled, this Court addresses the substance of petitioner's Fourth Amendment claims.

[4] Petitioner contends in his memorandum in support of his motion to vacate that agents searched his residence and property on March 31, 2005, but trial transcripts indicate that the relevant searches occurred instead on April 6, 2005. (Tr. 3:112-18). This Court examines petitioner's Fourth Amendment claims as they apply to the events of April 6, 2005.

**1. <u>Probable Cause for Arrest</u>**

Petitioner contends that federal agents lacked sufficient evidence to support probable cause for his arrest. Where a grand jury returns an indictment, probable cause supports an arrest warrant based upon that indictment. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) ("The Fourth Amendment requires that arrest warrants be based upon probable cause, supported by Oath or affirmation – a requirement that may be satisfied by an indictment returned by a grand jury . . . ." (internal citations omitted)). A facially valid indictment returned by a properly constituted grand jury "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975).

Here, there was probable cause to support the arrest warrant because it was issued based upon a facially valid indictment. *Kalina*, 522 U.S. at 129; *Gerstein*, 420 U.S. at 117 n.19. Petitioner has not presented evidence to support his claim that agents "falsely filed reports" with the court in grand jury proceedings. *David,* 134 F.3d at 474. Thus, petitioner's claim that he was arrested in violation of his Fourth Amendment rights will be denied. *See Kalina*, 522 U.S. at 129.

**2. <u>Seizure of the First Firearm</u>**

Petitioner also contends that police violated his Fourth Amendment rights by seizing the firearm that he dropped while leaving the vehicle. The Fourth Amendment protects individuals from "unreasonable searches and seizures" and typically requires police to obtain a warrant before a search. U.S. CONST. AMEND. IV; *Horton v. California*, 496 U.S. 128, 136-37 (1990). The plain-view doctrine is an exception to this rule. *Horton*, 496 U.S. at 136-37; *United States v. Sanchez*, 612 F.3d 1, 4 (1st Cir. 2010).

Under the plain-view doctrine, a warrantless seizure is lawful if "(i) the police officer who effects the seizure lawfully reaches the vantage point from which he sees an object in plain view; (ii) probable cause exists to support his seizure of that object; and (iii) he has a right of access to the object itself." *Sanchez*, 612 F.3d 1, 4-5 (1st Cir. 2010). In the plain-view context, probable cause to support seizure of an object exists if the incriminating character of an object is immediately apparent to police. *Id*. at 5. This inquiry considers whether the seizing officers' conclusion, taking into account the totality of the circumstances, was objectively based on a "fair probability." *Id*. The third prong of the doctrine asks "not whether the officer was lawfully in a position to see the contraband (the first element of the plain view analysis), but whether he could lawfully seize it without committing a trespass." *See United States v. Allen*, 573 F.3d 42, 54 n.4 (1st Cir. 2009) (citing *United States v. Jones*, 187 F.3d 210, 221 n.10 (1st Cir.1999)). Where police find a firearm on the ground while chasing a fleeing defendant during a car stop, the seizure of that firearm may be subject to the plain-view doctrine. *See United States v. Soares*, 451 F. Supp. 2d 282, 288 (D. Mass. 2006).

Here, the seizure of the firearm that petitioner dropped on the ground was clearly valid under the plain-view doctrine. *Sanchez*, 612 F.3d at 4-5. After avoiding a police stop, petitioner got out of his vehicle carrying a firearm, and police observed him drop the gun on the street and flee on foot. (Tr. 3:69-71). Officers observed the gun in plain view from a lawful vantage point on the public street, satisfying the first element of the doctrine. *Sanchez*, 612 F.3d at 4-5 (finding this element satisfied where police seized motorcycle from parking lot); (Tr. 3:123 (describing the gun as "laying out in the street")). The police also had probable cause to support the seizure of the gun. After refusing to pull over, petitioner left the Taurus holding a gun. Given the

totality of the circumstances, the seizing officers fairly concluded that the gun was of an incriminating character, satisfying the second element of the doctrine. *Id.* at 5. Finally, petitioner dropped the gun on the street where police could lawfully seize it without committing a trespass. *Allen*, 573 F.3d 42, 54 n.4. The facts clearly satisfy the requirements of the plain-view doctrine, and therefore the gun was not seized in violation of petitioner's Fourth Amendment rights. *Sanchez*, 612 F.3d at 4-5; *Soares*, 451 F. Supp. 2d at 288.

**3. Search of Motor Vehicle**

Petitioner further contends that police searched the Taurus in violation of the Fourth Amendment. Another exception to the Fourth Amendment's warrant requirement is an inventory search of a motor vehicle. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *United States v. Richardson*, 515 F.3d 74, 85 (1st Cir. 2008); *United States v. Mensah*, 796 F. Supp. 2d 265, 268 (D. Mass. 2011). The Fourth Amendment permits an inventory search of a vehicle without a warrant if the search is carried out pursuant to a standardized police policy. *Bertine*, 479 U.S. at 371; *Richardson*, 515 F.3d at 85. Such a standardized policy may be written or unwritten; both satisfy the Fourth Amendment's requirements. *Richardson*, 515 F.3d at 85 (citing *United States v. Hawkins*, 279 F.3d 83, 85-86 (1st Cir. 2002)).

Here, as stated above, petitioner's claim concerning the motor vehicle search is procedurally barred because he failed to raise it at trial and on direct appeal. *Berthoff*, 308 F.3d at 127-28; *Rosado*, 273 F. App'x at 2. On the merits, the trial record does not expressly indicate that police followed a standardized inventory search policy; however, officers "filled out" inventory report forms to describe and catalogue the search. (Tr. 3:138-39; 3:148). Thus, the available evidence in the record demonstrates that police conducted the search using at least

some standardized documentation. At a minimum, petitioner has not established that the search was unlawful.

In sum, petitioner's Fourth Amendment claim is procedurally barred and, in any event, should be denied on the merits.

**B. <u>Prosecutorial Misconduct Claim</u>**

Petitioner next contends that the government violated his Fourteenth Amendment rights because the police drug task force filed false reports, and prosecutors conspired with the police to use those reports to obtain arrest and search warrants. In particular, petitioner contends that "the police department drug task force and the government fail to have any audio or video recording or buy money" to make a sufficient showing that he committed the crime. (Mem. in Supp. of Mot. to Vacate at 5).

As an initial matter, the claim of prosecutorial misconduct is procedurally defaulted because petitioner failed to raise it at trial or on direct appeal. *Berthoff*, 308 F.3d at 127-28; *Rosado*, 273 F. App'x at 2. He has not demonstrated cause for his default, actual prejudice resulting from the alleged errors, or actual innocence. *Frady*, 456 U.S. at 167-68; *Bousley*, 523 U.S. at 627. Accordingly, his claim is barred.

In any event, the claim of prosecutorial misconduct fails on the merits. "Prosecutorial misconduct is only a ground for section 2255 relief if it violates petitioner's due process rights . . . that is, if the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st Cir. 2003) (quoting *Donnelly v. DeChristofaro*, 416 U.S. 637, 643 (1974)). In addition, a conviction at trial renders all but the most serious errors harmless. *United States v. Reyes-*

*Echevarría*, 345 F.3d 1, 4 (1st Cir. 2003) (citing *United States v. Mechanik*, 475 U.S. 66, 73 (1986)). Only a fundamental defect, such that a grand jury is no longer a grand jury, or an indictment is no longer an indictment, gives rise to the constitutional right not to be tried. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989). Where a jury returns a verdict of guilty beyond a reasonable doubt, that conviction demonstrates *a fortiori* that there was probable cause to charge the defendant with the offenses for which he was convicted, and any alleged errors in the grand jury proceedings are harmless. *United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) (citing *United States v. Mechanik*, 475 U.S. 66, 67 (1986)).

Here, petitioner has not demonstrated prosecutorial misconduct. He has not shown that grand jury procedures or prosecutorial conduct "infected his trial with unfairness" such that his conviction was a denial of due process. *Moreno-Morales*, 334 F.3d at 148 (quoting *Donnelly*, 416 U.S. at 643) (noting for comparison that due process rights would be offended where a prosecutor knowingly suborned perjury to obtain a conviction). Although he contends that the government did not possess an audio or video recording to support the indictment and arrest warrant, the government obtained an audio recording of him distributing cocaine base on February 23, 2005. (Ex. 2; Tr. 2:43-46). In addition, the jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge him with the four counts of his indictment. *Lopez-Lopez*, 282 F.3d at 9. Because he has not shown a fundamental defect in the grand jury proceedings, and that the defect led to unfairness at his trial, this Court will not grant relief on his prosecutorial misconduct claims. *Midland Asphalt Corp.*, 489 U.S. at 802; *Moreno-Morales*, 334 F.3d at 148; *Lopez-Lopez*, 282 F.3d at 9.

**C. Insufficient Evidence Claim**

Next, petitioner contends that there was insufficient evidence to convict him on Count One of the indictment, which charged him with distribution of cocaine base on February 23, 2005. (Mot. to Vacate at 9; Superseding Indictment at 1-2). Where a litigant intentionally relinquishes or abandons a known right, the litigant has waived the issue and it is unavailable for review. *United States v. Walker*, 538 F.3d 21, 23 (1st Cir. 2008).

Here, the claim fails because he waived the issue in his First Circuit appeal. On direct review, petitioner expressly conceded that the evidence at trial "was sufficient to prove beyond a reasonable doubt that he distributed cocaine base on February 23, 2005 [Count One] . . . . " *Rosado*, 273 F. App'x at 2 n.1. Petitioner conceded this argument on Count One while simultaneously contesting the sufficiency-of-the-evidence on other counts of his indictment. *Id.* Thus, he knew of his right to contest the sufficiency-of-the-evidence for Count One, but waived the claim. *Walker*, 538 F.3d at 23. Accordingly, he has waived the issue of sufficiency-of-the-evidence for Count One and this Court will not review it. *Id.*

**D. Ineffective Assistance-of-counsel Claim**

Petitioner next contends that his trial counsel was ineffective. In order to establish a claim of ineffective assistance-of-counsel, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The essence of an ineffective-assistance claim is that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *United States v. De La Cruz*, 514 F.3d 121, 140 (1st Cir. 2008) (internal

citations omitted). The Constitution does not guarantee to any defendant a perfect defense or a successful defense. *See Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012). Rather, "the performance standard is that of reasonably effective assistance under the circumstances." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

To succeed on an claim of ineffective assistance of counsel, a petitioner must show both (1) deficient performance by counsel and (2) resulting prejudice. *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 687). An insufficient showing on either prong will defeat a claim for ineffective assistance of counsel. *See, e.g., Malone v. Clarke*, 536 F.3d 54, 64 (1st Cir. 2008). To show deficient performance, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). A court making this evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Among other things, "[t]rial counsel is under no obligation to raise meritless claims," and "[f]ailure to do so does not constitute ineffective assistance-of-counsel." *Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990). To establish resulting prejudice, petitioner must show that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id*. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 692.

Here, petitioner contends that trial counsel was ineffective because he failed to raise the

claims that petitioner now raises concerning the Fourth Amendment, prosecutorial misconduct, and sufficiency-of-the-evidence as to Count One. (Mem. in Supp. of Mot. to Vacate at 7-8). As described above, those claims fail on the merits. Counsel's failure to raise those claims at trial does not constitute ineffective assistance-of-counsel because the claims were without merit. *Acha*, 910 F.2d at 32. Counsel's decision to forego litigating those claims was objectively reasonable. *See Strickland*, 466 U.S. at 687-88; *see also Acha*, 910 F.3d at 32. Similarly, counsel's failure to raise meritless claims does not demonstrate actual prejudice because such a claim would not have changed the result of the proceeding. *See Strickland*, 466 U.S. at 694. Therefore, petitioner has not demonstrated either prong of a successful ineffective assistance-of-counsel claim. *Id*. at 687; *Peralta*, 597 F.3d at 79. Accordingly, petitioner's ineffective assistance-of-counsel claim fails.

**E. Improper Sentence Calculation Claim**

Finally, petitioner contends that this Court improperly calculated his sentence under 18 U.S.C. § 924(c)(1)(A). (Supp. Mot. to Vacate at 2). Specifically, petitioner contends that this Court improperly applied a consecutive five-year mandatory-minimum sentence on Count Three, his conviction for possession of a firearm in furtherance of a drug trafficking crime, because his ten-year mandatory-minimum sentence for Counts One and Two exceeded the five-year minimum set forth in section 924(c)(1)(A). (*Id.* at 2-3).

As an initial matter, this claim is procedurally defaulted. Petitioner failed to raise the claim on direct appeal, despite raising other sentencing arguments to that court. *Berthoff*, 308 F.3d at 124; *Rosado*, 273 F. App'x at 2, 3. Petitioner also has not shown cause for the procedural default or actual prejudice, particularly in light of the fact that this Court granted him a

downward variance five years below the minimum guidelines. *Frady*, 456 U.S. at 167-68; (J. at 9). Accordingly, this Court will not grant petitioner collateral relief. *Berthoff*, 308 F.3d at 127-28.

In any event, petitioner's claim fails on the merits. The relevant statute, 18 U.S.C. § 924(c)(1)(A), provides:

> *Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law*, any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime– (I) be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. § 924(c)(1)(A) (emphasis added). Section 924(c)(1)(A) thus imposes a five-year statutory enhancement for use of a firearm in a drug-trafficking crime. *United States v. Parker*, 549 F.3d 5, 11 (1st Cir. 2008). In *Parker*, the First Circuit held that the statutory language and purpose of section 924 mandates that courts read the phrase "to the extent that a greater minimum sentence is otherwise provided" to refer to cases in which a greater minimum sentence is otherwise provided "on account of the firearm." *Parker*, 549 F.3d at 11. Where a mandatory-minimum sentence is based on an amount of drugs recovered, there is no danger of "double counting" a firearm for sentencing purposes. *See Parker*, 549 F.3d at 10-11.

Here, this Court sentenced petitioner in a manner consistent with the First Circuit's reading of section 924(c)(1)(A). *Parker*, 549 F.3d at 11. Petitioner's mandatory-minimum sentences for Counts One and Two were based on the quantity of drugs recovered (77.1 grams of cocaine base) and on his prior criminal history, not on any firearm-related offense. *Parker*, 549 F.3d at 11; (Sentencing Tr. 6:5-22). Because the mandatory-minimum sentences for Counts One

and Two were not related to a firearm, the imposition of a consecutive five-year mandatory-minimum for Count Three does not present the risk of "double counting" the firearm for sentencing purposes. *Parker*, 549 F.3d at 10-11 (distinguishing a mandatory-minimum sentence based on "the amount of drugs recovered" from that involving a firearm). Thus, section 924(c)(1)(A)'s "except" clause does not alter petitioner's sentence. *Parker*, 549 F.3d at 11. This Court properly calculated petitioner's sentence under section 924(c)(1)(A) and will not grant collateral relief on his claim.

## III. Conclusion

In sum, petitioner's claims are procedurally defaulted, fail on the merits, or both. For the foregoing reasons, petitioner's motion to vacate his sentence is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: November 20, 2012