# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No.** |
| **v.** | ) | **05-40011-FDS** |
| | ) | |
| **ANDRE ROSADO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

## ORDER ON MOTION FOR RELIEF
## UNDER THE FIRST STEP ACT OF 2018

**SAYLOR, C.J.**

This is a motion for reduction of a sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. In November 2006, defendant Andre Rosado was convicted after a jury trial of four crimes: distribution of cocaine base, possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. Because he was a career offender, and because the statutory maximum penalty on two of the counts was life imprisonment, the applicable guideline sentencing range was 420 months to life. He was sentenced to a non-guideline sentence with a term of imprisonment of 360 months followed by eight years of supervised release.

Rosado has now moved for a reduction of his sentence under the First Step Act. For the reasons set forth below, the Court concludes that he is eligible for relief under the statute; that he is subject to lower maximum sentences on two counts as a result; and that accordingly his guideline sentencing range has been lowered to 360 months to life. The Court will not convene a plenary resentencing hearing, but will instead reduce his prison sentence from 360 months to 288 months—that is, a reduction of six years from his original sentence.

I.     **Background**

In November 2005, Andre Rosado was charged in a four-count indictment with distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (Count 1); possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (Count 2); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 3); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 4). Count 1 was based on a sale of 29.4 grams of cocaine base (in the form of crack cocaine) to an undercover agent.  (Tr. 2:46; 3:178).  Counts 2, 3, and 4 arose out of an episode on April 6, 2005, during which he brandished a gun at officers and fled from a car that contained a second gun and 44.3 grams of cocaine base in twelve individual baggies.  (Tr. 3:69-70; 3:120-21; 3:164-168). After a trial, a jury convicted him of all four counts in November 2006.

Prior to sentencing, the government filed an information under 21 U.S.C. § 851 establishing that Rosado had been previously convicted of a felony drug offense in Worcester Superior Court.  (Dkt. No. 10).  As a result, on Counts 1 and 2, he was subject to a statutory mandatory minimum term of ten years and a maximum term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B)(iii).  (PSR ¶ 132).  On Count 3, he was subject to a mandatory minimum consecutive sentence of five years.  *Id.*

The sentencing occurred on March 9, 2007.  The Pre-Sentence Report, to which Rosado did not object, stated that he was responsible for 77.1 grams of cocaine base.  (PSR ¶¶ 13-30).[1]

---

[1] After officers apprehended Rosado, they also found an "eight ball" of what they believed to be cocaine base in his pocket at the Fitchburg police station.  (Tr. 2:84-86).  An eight ball is a dose of crack cocaine for a typical individual user that weighs one-eighth of an ounce, or approximately 3.5 grams.  (Tr. 2:61-62).  The PSR found him responsible for 77.1 grams of cocaine base in total—representing the sum of the 29.4 grams from the first

He was also found to be a career offender under the Sentencing Guidelines based on two

qualifying prior convictions, one for the prior drug offense and one for conspiracy to commit

murder.  (PSR ¶¶ 41, 52, 53).  As a result, his guideline range was increased.  *Id.*  Because the

maximum sentence on Counts 1 and 2 was life imprisonment, the offense level was 37.  When

coupled with a criminal history category of VI, that yielded a range of 360 months to life for

those two offenses.[2]  Because he was also subject to a five-year mandatory consecutive sentence

on Count 3, the final guideline range was 420 months to life.  (Tr. of Sentencing at 6-7).

The government recommended a sentence of 40 years, or 480 months.  (*Id.* at 14).

Defense counsel did not recommend a specific sentence, but instead requested that the Court, in

its discretion, impose a sentence of less than 420 months.  (*Id.* at 16-17).  The Court imposed a

non-guideline sentence of imprisonment of 360 months followed by eight years of supervised

release.  The sentence consisted of terms of 300 months on Counts 1 and 2 and 120 months on

Count 4, served concurrently, followed by a consecutive term of 60 months on Count 3.  In its

statement of reasons, the Court explained:

> The guideline sentence (35 years to life) is extraordinarily high, due to the
> interaction of the career offender guidelines and defendant's convictions for
> distribution of crack cocaine and for use of a firearm under 18 U.S.C. § 924(c).
> Defendant has only two predicate offenses, the minimum required to qualify as a
> career offender (although one conviction was for conspiracy to commit murder).
> Furthermore, because defendant went to trial, and did not receive an adjustment
> for acceptance of responsibility, 60 months was added to his minimum guideline
> sentence.  While a lengthy sentence is necessary to protect the public, a sentence
> of 30 years (rather than 35) is sufficient under the circumstances, and will not
> promote disrespect for the law.

Judgment at 9.

---

transaction, the 44.3 grams in individual bags found in the car, and 3.4 grams found on his person.  (PSR ¶¶ 13-20;
Tr. of Sentencing at 6).

[2] Had the guidelines been calculated without reference to the career-offender provisions, the offense level
would have been 32 and the criminal history category would have been IV.  (Tr. of Sentencing at 6).

Rosado is currently incarcerated at FCI Bennettsville in South Carolina, with an anticipated release date of February 15, 2031.  He is 43 years old and has served approximately 181 months of his 360-sentence.

## II.    Analysis

In 2010, Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372.  Section 2 of the Act raised the amount of cocaine base necessary to trigger the enhanced penalties of 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams to 28 grams.  At that time, that modification did not apply retroactively to defendant, who had been sentenced in 2007.  *See Dorsey v. United States*, 567 U.S. 260, 264 (2012); *United States v. Flores-Rivera*, 787 F.3d 1, 33 (1st Cir. 2015).

In 2018, Congress enacted the First Step Act of 2018.  That Act, among other things, made the sentencing changes of Section 2 of the Fair Sentencing Act retroactive.  Section 404 of the First Step Act provides in part as follows:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 . . . of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010.

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if section[] 2 . . . of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

> (c) LIMITATIONS.  . . .  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, § 404.

Defendant has moved for a reduction in his sentence pursuant to the First Step Act and for a resentencing hearing.  The government opposes the motion, arguing that he is not eligible for resentencing under the Act.  In the alternative, it argues that the court should use its

4

discretion to decline to reduce his sentence.

### A.       Defendant's Eligibility for Relief

Defendant contends that he was convicted of a "covered offense" within the meaning of the Act, and is therefore eligible to seek a reduced sentence.  Specifically, he states that he was convicted of violating § 841(a)(1) and sentenced under § 841(b)(1)(B)(iii), and because § 841(b)(1)(B)(iii) is a federal criminal statute whose statutory penalties were modified by Section 2 of the Fair Sentencing Act of 2010, he was convicted of a "covered offense."

The First Circuit has recently resolved a dispute as to whether the term "covered offense" in the First Step Act refers to the statute of conviction or the underlying criminal conduct of the defendant.  *See United States v. Smith*, 954 F.3d 446 (1st Cir. Apr. 8, 2020).  In *Smith*, the court evaluated the application of the First Step Act to a defendant who had been convicted of distributing cocaine base in violation of § 841(a) and sentenced under § 841(b)(1)(C).

First, it held that a "covered offense" is based on the statute of conviction, rather than on the drug weight associated with the "defendant's particular conduct."  *Id.* at 448-49.  Second, it held that the relevant statute of conviction that triggered First Step Act eligibility was a conviction for a cocaine base offense under § 841, regardless of the subsection under which he was sentenced, and whether the Fair Sentencing Act altered the text of that subsection.  The court explained: "The relevant statute that [the defendant] violated is either § 841 as a whole, or § 841(a), which describes all the conduct necessary to violate § 841.  Section 841(b)(1), in turn, sets forth how the penalties for that conduct vary based on drug quantity . . . Since § 841(b)(1) was 'modified' as to crack cocaine, and § 841(b)(1) sets forth all the 'statutory penalties' for § 841(a)(1), the violation in this case is a 'covered offense' under Section 404 of the First Step

Act." *Id.* at 449-50.[3]

Thus, all cocaine-base offenses under § 841 are "covered offenses."  Defendant here, who was convicted for a cocaine-base offense under § 841(a) and sentenced under § 841(b)(1)((B)(iii), was therefore convicted of a "covered offense."  Because his offense was committed before August 3, 2010, he is eligible for relief under the First Step Act.

### B.      The Recalculated Guideline Sentencing Range

The First Step Act authorizes a district court that imposed a sentence for a "covered offense" to "impose a reduced sentence as if . . . the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  First Step Act, § 404(b).  There are "at least two possibilities" for a remedy:  "plenary resentencing, in which case his GSR [guideline sentencing range] would potentially be recalculated under the current version of the Sentencing Guidelines Manual, *see* U.S.S.G. § 1B1.11(a), or . . . a procedure (either with or without a hearing) similar to that outlined in the *Godin/Ahrendt* doctrine, in which case his GSR would remain as it was but the district court might nevertheless vary downwardly."  *Smith*, 954 F.3d at 452 (citing *United States v. Frates*, 896 F.3d 93, 102 (1st Cir. 2018); *United States v. Ahrendt*, 560 F.3d 69 (1st Cir. 2009); *United States v. Godin*, 522 F.3d 133 (1st Cir. 2008)).  In *Smith*, the First Circuit remanded the issue to the district court to decide the appropriate remedy.  *Id.*

Here, the Court will recalculate defendant's GSR based on the current version of the Sentencing Guidelines, taking into account the revised penalties of the Fair Sentencing Act. "[W]hen 'imposing' a new sentence [under the First Step Act], a court does not simply adjust the statutory minimum; it must also recalculate the Guidelines range."  *United States v. Chambers*, 956 F.3d 667, at *4 (4th Cir. Apr. 23, 2020) (holding that district court was required to

---

[3] The court did not decide whether the applicable statutory provision was § 841 or § 841(a) because "neither party argue[d] that it would make any difference in this case."  *Smith*, 954 F.3d. at 450 n.4.

recalculate defendant's guidelines range to take into account both Fair Sentencing Act-related changes and a clear error in his career offender status).  *See, e.g.*, *United States v. Hegwood*, 934 F.3d 414 (5th Cir. 2019) (concluding that the First Step Act does not authorize a "plenary resentencing," rejecting defendant's request to modify his GSR based on his career offender status, but affirming district court's choice to modify his GSR based solely on Fair Sentencing Act-related changes); *United States v. Alexander*, 951 F.3d 706 (6th Cir. 2019) (holding that First Step Act did not entitle defendant to a plenary, *de novo* resentencing hearing, but upholding district court's recalculation of his GSR).

A threshold issue is whether the Court should recalculate the statutory maximum penalties, because those penalties affect the guideline calculation.  Any fact, other than a prior conviction, that increases the mandatory minimum or maximum penalty for a crime is an element of the crime, and must be "charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 466 (2000) (principle applies to maximum penalty); *Alleyne v. United States*, 570 U.S. 99, 99 (2013) (principle applies to mandatory minimum penalty).

*Apprendi* and *Alleyne* do not apply retroactively on collateral review.  *Sepulveda v. United States*, 330 F.3d 55 (1st Cir. 2003) (holding that *Apprendi* does not apply retroactively); *Butterworth v. United States*, 775 F.3d 459 (1st Cir. 2015) (holding that *Alleyne* does not apply retroactively).  However, those cases dealt with the question of whether a new rule of criminal procedure should be applied retroactively in habeas proceedings under the test set forth by *Teague v. Lane*, 489 U.S. 288 (1989).  Here, in contrast, the First Step Act explicitly provides for the retroactive application of lower statutory penalties.  It therefore would be anomalous to apply the Fair Sentencing and First Step Acts, but not apply the lower penalties of those statutes when

7

calculating the guideline range.

Accordingly, in calculating the maximum penalties according to the Fair Sentencing and First Step Acts, the Court will only consider the drug quantity charged in the indictment and found beyond a reasonable doubt by the jury—that is, five grams or more of cocaine base—even if the government could have readily pleaded and proved a higher amount. *See, e.g.*, *United States v. Rose*, 379 F. Supp. 3d 223, 236 (S.D.N.Y. 2019) ("The Court cannot simply assume that the government would have been successful in proving an indispensable element of a criminal offense."). According to the Fair Sentencing Act, a person with a prior drug felony conviction whose drug quantity does not meet the 28-gram threshold of § 841(b)(1)(B)(iii) is subject to the statutory penalties of U.S.C. § 841(b)(1)(C), which sets no mandatory minimum and a statutory maximum term of imprisonment of 30 years. The maximum term of 30 years will therefore apply. The drug quantity in the PSR, 77.1 grams, will be used to calculate the base offense level under the sentencing guidelines.

The next issue is the effect of the lower statutory maximum sentence on the guideline calculation. Because the maximum term of imprisonment has been reduced from life to 30 years, the base offense level for defendant, as a career offender, is lowered from 37 to 34. U.S.S.G. § 4B1.1(b).[4] The offense level of 34, when coupled with a criminal history score of VI for being a career offender, yields a GSR of 262 to 327 months for his drug offenses (Counts 1 and 2). U.S.S.G. Sentencing Table, Ch. 5, Pt. A. Adding the 5-year (60-month) mandatory consecutive sentence for Count 3 yields a GSR of 322 to 387 months. 18 U.S.C. § 924(c)(1)(A)(i). However, because the 322-to-387 month range is still below the range of 360

---

[4] If defendant were not a career offender, the base offense level would be 24, based on the 77.1-gram drug weight cited in his PSR; the base offense level for that drug weight at the time of sentencing was 32. U.S.S.G. § 2D1.1(c) (2018); Tr. of Sentencing at 6.

months to life for career offenders convicted of a firearm offense under 18 U.S.C. § 924(c), the

higher range applies.  U.S.S.G. § 4B1.1(c)(3).  The revised guideline sentencing range is

therefore 360 months to life.

### C.      The Revised Sentence

Once a court has found a defendant eligible for relief, "the First Step Act gives [the court]

discretion to grant or deny a sentencing reduction."  *United States v. Smith*, 954 F.3d 446, 452

(1st Cir. Apr. 8, 2020).

It does not appear that the Court is required to hold a hearing on a motion to reduce a

sentence under the First Step Act.  *See United States v. Williams*, 943 F.3d 841, 843 (8th Cir.

2019) ("Because the Act gives district courts discretion to reduce the sentence and does not

mention a hearing, it does not require district courts to hold a hearing."); *United States v.*

*Hamilton*, 790 F. App'x 824, 826 (7th Cir. 2020) ("[N]othing in the First Step Act requires a

district court to hold any sort of hearing."); *United States v. Alexander*, 951 F.3d 706, 708 (6th

Cir. 2019) ("[A] sentence reduction authorized by the First Step Act and § 3582(c)(1)(B) does

not require a de novo resentencing hearing."); *see also* Fed. R. Crim. P. 43(b)(4) (stating that a

defendant need not be present at a proceeding that "involves the correction or reduction of a

sentence under . . . 18 U.S.C. § 3582(c)").  Because the parties have briefed the issues thoroughly

and provided additional documentation to the Court, there is no reason to hold such a hearing

here.

The Court will first consider the guideline sentencing range and whether defendant's

circumstances justify a departure from the range.  *See Gall v. United States*, 552 U.S. 38, 49

(2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the

applicable Guidelines range . . . As a matter of administration and to secure nationwide

consistency, the Guidelines should be the starting point and the initial benchmark.").

The Court will also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to afford adequate deterrence and protect the public.  In *United States v. Rose*, an early First Step Act case, the district court observed:

> [E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.  Importing the standard set forth in § 3553(a) makes sentencing proceedings under the First Step Act more predictable to the parties, more straightforward for district courts, and more consistently reviewable on appeal.  It is unlikely that Congress intended to give district courts unbounded or unreviewable discretion to grant or deny relief, and if § 3553(a) did not apply, then courts would have to develop new and untried standards to limit judicial discretion.

*United States v. Rose*, 379 F. Supp. 3d 223, 234-35 (S.D.N.Y. 2019).  *See United States v. Chambers*, 956 F.3d 667, at *6 (4th Cir. Apr. 23, 2020) ("District courts across the country are apply the § 3553(a) factors in these First Step Act cases, and our peer circuits are also treating the factors as if they must apply . . . We agree, and now hold that they do."); *United States v. Allen,* 956 F.3d 355, 358 (6th Cir. Apr. 14, 2020) (citing *Rose* and holding that "district courts may look to § 3553(a)'s familiar framework when deciding whether to reduce a defendant's sentence under the First Step Act"); *United States v. Shaw*, 2020 WL 2029258, at *6 (7th Cir. Apr. 28, 2020) ("[N]othing in the First Step Act precludes a court from utilizing § 3553(a)'s familiar framework when assessing a defendant's arguments; and doing so makes good sense" because "courts are well versed in using § 3553 as an analytical tool for making discretionary decisions.").  The Sentencing Commission has also informally advised that "The [First Step] Act made no changes to 18 U.S.C. § 3553(a), so the courts should consider the guidelines and policy statements, along with the other § 3553(a) factors, during the resentencing."  U.S. Sentencing

Comm'n, Office of Educ. & Sentencing Practice, *ESP Insider Express Special Edition, First Step Act*, at 8 (Feb. 2019), https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf.

The question is whether, and to what extent, the Court should vary from the new guideline range.  The sentence originally imposed, 360 months, is now within the revised guideline range of 360 months to life.  At sentencing, the Court observed that a "perfect storm" of circumstances had resulted in an extraordinarily high guideline range, including the interaction of the career-offender guidelines and defendant's convictions for distribution of crack cocaine and for use of a firearm under 18 U.S.C. § 924(c); the fact that defendant had two prior convictions, the minimum necessary to qualify as a career offender; the filing of an information under 21 U.S.C. § 851; and the fact that he went to trial and did not receive an acceptance of responsibility reduction.  (Def. Mot. at 6; Tr. of Sentencing at 20-21; Judgment at 9).  At the same time, the Court noted that defendant had been convicted of serious crimes, including firearms violations, and that he had a serious criminal history, including a prior conviction for conspiracy to commit murder.  (Tr. of Sentencing at 19-20).  The Court sought to balance those considerations, among others, by imposing a lengthy sentence, but with a 60-month downward variance.  The Court noted that a greater variance under the circumstances could potentially "promote disrespect for the law" or "do violence to the guidelines themselves and the career offender provisions."  (Judgment at 9; Tr. of Sentencing at 21).

In addition to the changes resulting from the First Step Act, the Court will consider defendant's post-sentencing conduct in its revised sentencing decision.  In *Pepper v. United States,* the Supreme Court found that evidence of post-sentencing rehabilitation is "highly relevant" to § 3553(a) sentencing factors, including the "history and characteristics of the

11

defendant" and the "need for the sentence imposed," and may "critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary.'" *Pepper*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. § 3553(a)). While *Pepper* addressed plenary resentencing after a conviction was vacated on appeal rather than resentencing under § 3582(c), the reasoning of the opinion has been extended to First Step Act cases. *See, e.g.*, *United States v. Shaw*, 2020 WL 2029258, at *6 (7th Cir. Apr. 28, 2020) (citing *Pepper* and holding that district courts evaluating First Step Act petitions may consider post-sentencing conduct, which is relevant to § 3553(a) sentencing factors); *United States v. Chambers*, 956 F.3d 667, at *6 (4th Cir. Apr. 23, 2020) (resentencing court may consider post-sentencing conduct); *United States v. Allen,* 956 F.3d 355, 358 (6th Cir. Apr. 14, 2020) ("Although *Pepper* dealt with plenary resentencing procedure, whereas the First Step Act § 404 in contrast only granted courts the power to modify sentences, such a distinction does not logically prevent courts from considering post-sentencing conduct in assessing the § 3553(a) factors during a § 3582(c)(1)(B) sentence-modification proceeding.") (citation omitted); *United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019) (district court may consider post-sentencing rehabilitation, but need not adjust a sentence based on evidence of rehabilitation). *See also United States v. Khut*, 2019 WL 4345294 (D. Mass. Sep. 12, 2019) (resentencing defendant to time served and noting his spotless prison disciplinary record during sixteen years of imprisonment); *United States v. Abdullah*, 410 F. Supp. 3d 346, 351 (D.R.I. Oct. 10, 2019) (reducing defendant's sentence after considering, among other factors, defendant's limited disciplinary record, completion of classes, and positive work history while incarcerated); *United States v. Young*, 2019 WL 6724332, at *2 (S.D.N.Y. Dec. 11, 2019) (resentencing defendant to time served, in part based on his expressions of genuine remorse and good conduct while incarcerated).

Defendant urges the court to consider his post-sentencing conduct and has provided documentation of his rehabilitative efforts.  Specifically, he states that he worked as the lead cook at FCI Fort Dix from 2017 to 2019 and attached a report from his supervisor, who described him as a "role model/inmate mentor" who "possesses a sincere attitude of doing projects right and takes criticism very well."  (Def. Mot. at 6-7; Positive Decision Report, Def. Ex. A).  He has enrolled in a number of educational programs while incarcerated, including courses on anger management and parenting, which he says has helped him re-establish a positive relationship with his son.  (Def. Mot. at 7; Inmate Education Data Transcript, Def. Ex. B).  And he states that he has been involved in only one "serious" disciplinary incident while in Bureau of Prisons custody, an assault in January 2010.  (Def. Mot. at 7; Inmate Disciplinary Record, Def. Ex. C).  He does, however, have six other disciplinary incidents over the past eleven years, based on violations for "refusing to obey an order," unauthorized possession of stamps or other objects, being in the wrong common area, making a three-way phone call, and tattooing or harming himself.  (*Id.*).

The Court will certainly consider defendant's rehabilitation efforts to guide its discretionary decision to revise his sentence.  It will also, however, take into account the various disciplinary incidents, which to some extent counterbalance the positive aspects of his conduct since he has been incarcerated.

Under the circumstances, the Court concludes that a sentence of 360 months is "greater than necessary to comply with the purposes" of the sentencing considerations of 18 U.S.C. § 3553(a)(2).  The sentence originally imposed was 60 months below the low end of the then-existing guideline range.  Taking into account the factors identified above, including defendant's post-sentencing conduct, the Court will impose a new sentence that is 72 months below the low

end of the new guideline range.  Accordingly, the Court will impose a revised sentence of 288 months of imprisonment, to be followed by an eight-year term of supervised release.  That sentence represents a balancing of the factors originally considered by the Court when it imposed the original sentence in 2007, while also taking into account the revised guideline calculation, the sentencing factors of 18 U.S.C. § 3553(a), and defendant's conduct and rehabilitative efforts while incarcerated.  The sentence will be a combination of concurrent terms of 228 months on Counts 1 and 2 and 120 months on Count 4 and a consecutive term of 60 months on Count 3. The eight-year term of supervised release, and the various conditions of that release, will remain unchanged.

## III.    Conclusion

For the foregoing reasons, the motion of defendant Andre Rosado for a reduction of sentence pursuant to the First Step Act of 2018 is GRANTED.  A modified judgment setting forth the reduced sentence will issue separately.

**So Ordered.**

<br>

                                                      /s/ F. Dennis Saylor IV
                                                      F. Dennis Saylor, IV
Dated: May 14, 2020                                   Chief Judge, United States District Court